IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

DEANNE DEGRANDPRE,

        Plaintiff,

v.                              CIVIL ACTION NO.  ED CV 09-00825 JRG (PJW)

USAA CASUALTY INSURANCE COMPANY, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is the defendant's Motion for Summary Judgment [Docket 20]. For reasons discussed below, the court **GRANTS** the defendant's Motion for Summary Judgment [Docket 20], and **ORDERS** that this action be dismissed and stricken from the docket.

**I.    Background**

This case arises from a dispute over insurance coverage. One of the plaintiff's vehicles was involved in an accident on December 26, 2008. The plaintiff, DeAnne DeGrandpre, asserts that she had a valid insurance policy with the defendant, USAA Casualty Insurance Company ("USAA"),[1] at the time of the accident. USAA contends that it had cancelled the plaintiff's policy for nonpayment of premiums two months before the accident.

In May 2008, the plaintiff purchased an automobile insurance policy from USAA to cover her 2005 Audi A4 and her 2003 Ford Mustang for the period from July 1, 2008 to January 1, 2009.[2]

---

[1] The plaintiff originally named both USAA Casualty Insurance Company and USAA Insurance Agency as defendants in this action. The parties later stipulated to dismiss USAA Insurance Agency from the case.

[2] The plaintiff also had other USAA insurance policies that are not at issue in this case.

The plaintiff fell behind on her monthly payments and, as of September 10, 2008, the plaintiff owed USAA $1044.53 in overdue premium payments.

It is at this point that the parties' versions of events diverge. USAA asserts that it mailed the plaintiff a Notice of Cancellation for Non-Payment of Premium (the "Notice") on October 8, 2008. This Notice stated that unless the plaintiff paid the full $1086.71 owed by either money order or cashier's check on or before October 26, 2008, her insurance policies would be cancelled. The plaintiff asserts that she never received this Notice. On October 10, 2008, the plaintiff attempted to make a partial payment of $363.18, but USAA rejected this payment and instructed the plaintiff to send a certified form of payment. The plaintiff did not send any payments by money order or cashier's check before October 26, 2008. On October 26, 2008, USAA cancelled the plaintiff's insurance policy.

The record contains evidence of subsequent communications between the parties, which I will only briefly summarize here as it does not bear directly on the pending Motion. After USAA cancelled the plaintiff's policy, USAA continued to send the plaintiff correspondence regarding the cancellation of the policy as well as bills to collect the outstanding premiums. The plaintiff called USAA regarding the overdue payments and the cancellation of the policies, sent at least one personal check which was rejected by USAA, and sent USAA at least one payment via certified check.

On December 26, 2008, while driving the plaintiff's Ford Mustang, the plaintiff's daughter was involved in an accident with another automobile. The plaintiff's husband reported the accident to USAA that day. On December 29, 2008, USAA denied the plaintiff's claim over the phone, informing the plaintiff that she did not have a policy in effect with USAA at the time of the accident.

On January 9, 2009, after further investigating the plaintiff's claim, USAA sent a follow-up letter advising the plaintiff that USAA "had no coverage obligation in connection with the December 26, 2008 accident since there was no active USAA automobile insurance policy insuring the subject automobile on said date." (Pl.'s Statement of Genuine Issues of Material Facts in Opp'n ¶ 32.)

On March 19, 2009, the plaintiff filed this action in the Superior Court of the State of California for the County of Riverside. The plaintiff alleged causes of action for breach of contract, breach of the covenant of good faith and fair dealing, and tortious bad faith breach of insurance contract. The plaintiff sought damages for property damage to her vehicle, attorney's fees and costs associated with any third-party claims against the plaintiff arising from the accident, and mental distress. On April 28, 2009, USAA removed the action to this court pursuant to 28 U.S.C. § 1441, based on diversity of citizenship between the parties under 28 U.S.C. § 1332.

USAA filed a Motion for Summary Judgment, and this court held a hearing at the defendant's request after the parties briefed the Motion. During the hearing, the court explained that it was awarding summary judgment to the defendant and that this written opinion would follow.

## II.    Standard of Review

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most

favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

## III.  Discussion

USAA contends that summary judgment is appropriate because there are no triable issues of fact regarding USAA's mailing of the Notice to the plaintiff on October 8, 2008. USAA asserts that it has proved mailing the Notice which, under California law, is sufficient to establish that USAA gave the plaintiff the required notice that her policy was cancelled. The plaintiff asserts that she did not receive the Notice and that subsequent communications with USAA prove that USAA did not mail the Notice.[3]

### A.  Breach of Contract Claim

---

[3] USAA has offered alternative arguments as to why the court should also grant USAA summary judgment on the plaintiff's bad faith claims. As explained below, because I find that USAA is entitled to summary judgment on the breach of contract claim—and the plaintiff may not maintain a bad faith or tortious breach of contract claim without an underlying contract—I need not address these alternative arguments.

Pursuant to the California Insurance Code, USAA was authorized to cancel the plaintiff's policy for nonpayment, provided that USAA gave the plaintiff "at least 10 days notice of cancellation accompanied by the reason therefor." Ca. Ins. Code §§ 661 - 662. The Insurance Code further provides that:

> *Proof of mailing* or delivery of a notice of cancellation to a lienholder or an additional interest on a policy to which this chapter applies *shall be sufficient to terminate the interest of the parties* provided the notice is mailed or delivered at least the maximum number of days prior to termination of the parties' interest as required by Section 662.

Ca. Ins. Code § 662.1(emphasis added).

Assuming that USAA mailed the Notice on October 8, 2008, the Notice meets the statutory requirements of the California Insurance Code. *See* Ca. Ins. Code §§ 661. USAA claims to have mailed the Notice on October 8, 2008, more than the ten days required by the Insurance Code. In addition, the Notice clearly provided nonpayment of premiums as the reason for cancellation. Accordingly, USAA need only establish "proof of mailing" as required by Section 662.1 to prove that it properly cancelled the plaintiff's insurance policy on October 26, 2008.

USAA cites several pieces of evidence in the record as "proof of mailing" the Notice. Specifically, USAA cites to the declaration of Michael Kramer, the manager and supervisor of USAA's outgoing mail department.[4] Mr. Kramer describes in detail the standard operating procedures of USAA's outgoing mail department. Included in these procedures is a step wherein a USAA employee "picks up from the United States Postal Service the previous day's certificate of Mailing" and then, under Mr. Kramer's supervision, "manually stamps [USAA's] copies of the

---

[4] USAA also cites to the declarations of Heidi Hawken and Henry Lombrano. While these declarations provide foundation for USAA's business records, the declarations themselves do not bear on the issue of proof of mailing.

-5-

Notices of Cancellation for Nonpayment of Premium with the date reflected on the Certificate of Mailing returned from the post office, confirming that the letter was mailed on that date by the United States Postal Service." (Decl. of Michael Kramer ¶¶ 8-9.) Mr. Kramer "verified that each of the foregoing standard operating procedures was followed with respect to the Notice of Cancellation for Nonpayment of Premium." (*Id.* ¶ 11.)

As further evidence of proof of mailing, USAA points to internal business records pertaining to mailing of the Notice on October 8, 2008.[5] First, USAA points to the Notice, dated October 7, 2008, which states that the plaintiff's policy will be cancelled for nonpayment of premium on October 26, 2008, unless full payment in the amount of $1086.71 is received or postmarked before that date. (Ex. 4 to Def.'s Mot. for Summ. J.) The upper corner of the Notice contains a provision stating that "I hereby certify that I mailed the Original Cancellation/Termination Notice, an exact copy of which appears on this page/pages on [October 8, 2008], and at said time received the U.S. Postal Service Certificate of Mailing which is kept on file at USAA." (*Id.*) This statement bears the stamped signature of "D. King," a mailroom employee, and is dated October 8, 2008. Second, USAA provides the U.S. Postal Service Certificate of Mailing dated October 8, 2008. This Certificate of Mailing shows that USAA sent a piece of mail to the plaintiff at her home address on October 8, 2008. (Ex. 5 to Def.'s Mot. for Summ. J.)

The plaintiff contends that she never received the Notice and that this is evidence that the Notice was never mailed. The plaintiff further asserts that her subsequent communications with

---

[5] The plaintiff's objections to this evidence are **OVERRULED**. USAA provided declarations from three USAA employees, stating that these exhibits are business records prepared by USAA in the ordinary course of business. Accordingly, USAA provided proper foundation for this evidence and established that the evidence falls under the hearsay exception of Rule 803(6) of the Federal Rules of Evidence. *See* Fed. R. Evid. 803(6).

USAA is additional evidence that USAA did not mail the Notice on October 8, 2008. Under California law, proof of mailing is sufficient to terminate an insurance policy for nonpayment of premiums; an insurance company does not have to show that the insured actually received notice. *See* Ca. Ins. Code. §§ 662.1-664. USAA has shown proof of mailing the Notice and the plaintiff's mere denial of receipt of the Notice does not rebut this showing. The communications cited by the plaintiff similarly do not contradict USAA's proof of mailing. These communications all took place *after* October 8, 2008, and does not bear on the dispositive issue of whether USAA mailed the Notice in compliance with the California Insurance Code. Accordingly, this court **FINDS** that USAA has carried its burden of showing that no triable issues of fact remain regarding "proof of mailing" the Notice. Thus, USAA's Motion for Summary Judgment on the plaintiff's breach of contract claim is **GRANTED.**

### B. Bad Faith and Tortious Breach of Contract Claims

"In order to establish a breach of the implied covenant of good faith and fair dealing under California law, a plaintiff must show (1) benefits due under the policy were withheld, and (2) the reason for withholding benefits was unreasonable or without proper cause." *Feldman v. Allstate Ins. Co.,* 322 F.3d 660, 669 (9th Cir. 2003) (internal citations omitted). The Supreme Court of California has held that "because a contractual obligation is the underpinning of a bad faith claim, such a claim cannot be maintained unless policy benefits are due under the contract." *Waller v. Truck Ins. Exchange, Inc.,* 900 P.2d 619, 638 (Ca. 1995). In the present case, USAA cancelled the plaintiff's policy two months before the plaintiff's automobile was involved in an accident. Because the plaintiff did not have a contract with USAA at the time of the accident, she was not entitled to any benefits from USAA and, therefore, cannot maintain a bad faith claim against USAA. The plaintiff

similarly cannot maintain a tortious breach of insurance contract claim because there was no contract on which to base this claim. Accordingly, this court **FINDS** that the plaintiff cannot maintain either a bad faith or tortious breach of contract claim and **GRANTS** USAA's Motion for Summary Judgment as to those claims.

V.      **Conclusions**

For the reasons discussed above, the court **GRANTS** the defendant's Motion for Summary Judgment [Docket 20], and **AWARDS** summary judgment to the defendant. The court **ORDERS** that this action be dismissed and stricken from the docket. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:      January 10, 2011

Joseph R. Goodwin, Chief Judge